IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVEN O'DONNELL, *et al.*,  )
 )
 Plaintiffs,  )
 )
 )
 )  No. 12 C 6762
 v.  )
 )  Judge John A. Nordberg
AMERICA AT HOME HEALTH CARE AND  )
NURSING SERVICES LTD.  )
 )
 Defendant.  )

## MEMORANDUM OPINION AND ORDER

### Introduction

Plaintiffs Steven and Amy O'Donnell, husband and wife, were both fired by defendant America At Home in the summer of 2011. They claim the firings were in retaliation for Steven's refusal to give back overtime pay he legitimately earned over the previous 13 months.

The complaint has three counts. The first two are anti-retaliation claims under the Fair Labor Standards Act. Count I focuses on the firing of Steven, and Count II on the firing of Amy. Count III is a common law retaliatory discharge claim. Defendant America At Home has filed a motion to dismiss pursuant to Rule 12(b)(6). For the reasons explained below, the motion is denied.

### Facts

The following allegations, taken from the complaint, are assumed true for purpose of this motion. From January 2008 until his firing on June 11, 2011, Steven O'Donnell was the Director of Human Resources for America at Home. (¶ 6.)

Steven regularly worked overtime between April 2010 and May 25, 2011 and did so "with the knowledge and approval of Defendant's Chief Executive Officer, Greg Taylor." (¶ 7.) America At Home paid Steven time and a half for his work up until May 16, 2011. (¶ 8.)

On May 25, 2011, Steven was confronted by Rachel Fitzpatrick, the president of the company and also Taylor's wife, who questioned Steven about the legitimacy of overtime entries

from the previous pay period. (¶ 9.) Steven told Fitzpatrick that her husband had already approved the overtime. Fitzpatrick responded that she would have to talk to Taylor who was then out of town. (*Id.*)

On June 3, 2011, Taylor accused Steven of fraudulently submitting overtime requests. (¶ 10.) Steven denied the accusation and reminded Taylor that he previously approved the overtime. Taylor said that he would have to fire Steven and that Steven would have to reimburse the company for all overtime paid during the previous year. (*Id.*) Steven told Taylor that he did not agree to give back overtime pay. (*Id.*)

Later the same day, the two men met again. Taylor explained that he and his wife had "arrived at a solution." (¶ 11.) They would allow Steven to keep his job if he agreed to repay "a portion" of the overtime wages in dispute. (*Id.*) Taylor also told Steven not to discuss the offer with his wife, who was a registered nurse also employed by the company. (*Id.*)

On June 7, 2011, Taylor called Steven into his office to sign a document in which Steven would agree to return overtime pay he had received. (¶ 12.) Steven "again voiced his opposition" to repaying overtime compensation because he believed he had lawfully earned the pay. (*Id.*) Immediately thereafter, he was fired. (*Id.*)

After firing Steven, the company continued to retaliate against him by trying to press criminal charges against him, contesting unemployment benefits, and by firing his wife even though her performance was at or above satisfactory levels. (¶ 14.)

## **Analysis**

The first two counts are anti-retaliation claims under Section 215(a)(3) of the FLSA. 29 U.S.C. § 215. This section makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" related to the FLSA. In *Kasten v. Saint-Gobain Performance Plastics Corp.*, the Supreme Court recently held that an employee's oral complaint is sufficient to satisfy the requirement that the employee have "filed" a complaint. 131 S.Ct. 1325, 1335 (2011).

The parties agree that a plaintiff asserting this type of claim must show: (1) he engaged in protected expression; (2) he suffered an adverse employment action; and (3) there is a causal link between the first two elements. (Def. Mem. at 4, *citing Scott v. Sunrise Healthcare Corp.*, 195 F.3d 938, 940 (7th Cir. 1999).)

America At Home agrees that plaintiffs suffered an adverse employment action by being fired, but argues that they cannot meet the first requirement (protected expression) or the third (causal link). The arguments are closely related and ultimately turn on questions of fact not suitable for resolution on a Rule 12(b)(6) motion.

Turning to the first requirement, America At Home argues that Steven O'Donnell did not engage in protected expression because he only complained about having to give back overtime pay he already earned, rather than complaining about not being paid overtime pay in the first place. America At Home concedes that the latter scenario would be sufficient to state an FLSA anti-retaliation claim. (Def. Mem. at 5 ("if Steven were complaining to America at Home [that] he was not receiving overtime pay, his 'complaint' would be considered protected activity").)

This argument is not grounds for dismissing the complaint under Rule 12(b)(6). As an initial point, some of the overtime pay at issue – from May 16th until May 25th, 2011 – was *never* paid. *See* Cmplt. ¶ 13. Therefore, at a minimum, some portion of the claim would go forward regardless. As for the already-paid overtime, we are not persuaded by America At Home's argument that this scenario should be treated differently from the scenario where overtime pay is never paid at all. America At Home has not cited to any case distinguishing these two similar scenarios. *See* Def. Mem. at 5-6. Moreover, we are not aware of any policy or logical reason why Congress would have wanted to treat these two situations differently. Otherwise, an unscrupulous employer could avoid FLSA obligations by paying an employee overtime pay but then immediately turning around and demanding that the employee refund the pay or else be fired.

America At Home next argues that plaintiffs cannot meet the third requirement of showing there is a causal link between Steven's refusal to give back his overtime pay and his firing. This argument rests on a complicated version of the facts which America At Home reconstructs by piecing together selective allegations from paragraphs 9 through 12 of the complaint. However, we cannot accept this version of the facts because it fails to give reasonable inferences in plaintiffs' favor as Rule 12(b)(6) requires. We need not now attempt to parse through this version of facts because it is rebutted – quite directly – by paragraph 12 of the complaint. It states that in the meeting on June 7th Steven was fired "immediately" after he "voiced his opposition to Taylor's demand that he repay overtime compensation lawfully earned." It is hard to envision a more direct causal connection. The word "immediately" suggests that the two events – the refusal to give back pay and the firing – both occurred in this same interchange between Steven and Taylor and that they were thus minutes apart. This is not a situation where a party is fired months later and where the employer is relying on a separate, performance-based rationale entirely unconnected to the overtime pay issue.

We understand that America At Home believes that Steven complained about an FLSA violation merely as a smokescreen to cover up his own fraud in submitting false overtime pay requests. Perhaps this version of the facts will eventually be proven true and will allow defendant to file a motion for summary judgment, such as in *Cichon v. Exelon Generation Company, L.L.C.*, 401 F.3d 803, 811-12 (7th Cir. 2005) (granting summary judgment in an FLSA anti-retaliation case where company had questioned employee's performance over a year before he filed his FLSA lawsuit). But these fraud accusations cannot be taken as true in considering a motion to dismiss because the complaint states clearly that overtime pay was "lawfully earned" (¶¶ 7, 12), thus negating (for now) the fraud accusation. In short, this is a factual dispute not resolvable through a Rule 12(b)(6) motion.

America At Home next argues that plaintiff Amy O'Donnell, Steven's wife, cannot bring an FLSA claim in her own name because, even if it is proven that the company intentionally fired her to retaliate against Steven for his FLSA complaint, she never engaged in protected expression of her own. Plaintiffs concede in their response brief that Amy did not herself complain about overtime pay.  But they argue that she still can bring an FLSA claim based on the Supreme Court's recent decision in *Thompson v. N. Am. Stainless*, 131 S.Ct. 863 (2011).  In *Thompson*, the Supreme Court addressed the issue of third-party reprisals under Title VII.  The employer fired an employee three weeks after it learned that his fiancee had filed a sex discrimination charge with the EEOC.  *Id.* at 867. Noting that the anti-retaliation provision in Title VII was meant to cover a "broad range of employer [retaliatory] conduct," the Court (in an opinion written by Justice Scalia) held that the employee had standing to bring a retaliation claim because he fell within the "zone of interests" protected by Title VII. *Id.* at 868, 870. Plaintiffs argue that the "zone of interests" test should apply here because courts have used the Title VII retaliation legal tests to analyze FLSA retaliation claims. (Pls. Resp. at 7.)  If the "zone of interests" test were applied here, it is clear that Amy, as Steven's wife, falls within this zone. 131 S.Ct. at 868 ("firing a close family member will almost always meet" the zone of interests test).

In its reply brief, America At Home does not dispute that the "zone of interests" test applies here in this FLSA case, nor that Amy falls within that zone. Instead, America at Home argues that Amy cannot bring a retaliation claim because the company's firing of her was not the "intended means" of retaliating against her husband. According to America at Home, the company's primary method was to fire Steven. But we are not persuaded by this argument because we cannot find any language in *Thompson* limiting recovery to the primary method of retaliation. If a company were seeking to punish an individual, there is no reason to assume, as America At Home suggests we do, that it would automatically stop after firing the offending employee and would not go on to further retaliate against that employee by firing his spouse. In sum, based on the case law submitted by defendant, we are not persuaded that Amy's claim should be dismissed.

America At Home's last arguments are directed at Count III, which is a common law retaliatory discharge claim under Illinois law. This tort is an exception to the normal employment at-will doctrine. The plaintiff must show that his discharge "violates a clear mandate of public policy." *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 628 (7th Cir. 2009).  Although Illinois courts have not given a "precise definition" of the phrase "clear mandate of public policy," they have held that the standard is met in these two situations:  "(1) when an employee is fired for asserting a workers' compensation claim, and (2) when an employee is fired for refusing to engage in illegal conduct or reporting the illegal conduct of others ('whistle blowing' or 'citizen crime fighting')." *Brandon v. Anesthesia & Pain Management Assocs.*, 277 F.3d 936, 941 (7th Cir. 2002) (internal citations omitted).

Plaintiffs seek to rely on the whistle blowing line of cases and, more specifically, the exception for an employee who "refuses to perform an illegal act" consisting in this case of the alleged failure to pay overtime under the FLSA and the Illinois Minimum Wage Law ("IMWL"). (Pls. Resp. at 7-8, *citing Rojo v. Mobile Management Co., Inc.*, 1995 WL 549084 at * 3 (N.D. Ill.

Sept. 8, 1995).)  In its reply brief, America At Home argues that plaintiffs cannot rely on this particular exception because "Steven, the employee, cannot violate either the FLSA or IMWL." (Reply at 7.)  America At Home believes that the two statutes do not "speak in terms of employees violating those respective statutes, but instead speak to employers violating those statutes." (*Id.*)  This argument, as presented here, is insufficient to justify dismissing the claim. As an initial matter, America At Home only raised it in its reply brief. Therefore, we do not have the benefit of plaintiffs' response. Moreover, America At Home has not cited to any case stating that the illegal act in which the employee refuses to perform must be one in which he is personally liable as opposed to being one in which his employer is liable. In short, this issue has not been fully briefed or analyzed yet by the parties. The parties may raise this issue again, if appropriate, on a motion for summary judgment.

America At Home raises one other argument directed at Count III.  It asserts that Amy cannot assert such a claim because the zone of interests theory from *Thompson* "is not applicable to a state law action and counsel for Defendant has been unable to locate one case suggesting anything to the contrary." (Reply at 9.)  Again, as with the previous argument, we do not have the benefit of plaintiffs' response, nor has the issue been thoroughly analyzed to allow this Court to dismiss the retaliatory discharge claim against Amy at this stage of the litigation. *Thompson* is a recent case and the issue has not yet (to this Court's knowledge) been addressed by courts.  This issue can also be addressed more fully on a motion for summary judgment after discovery has been taken.

**ENTER:**

*[signature: John A. Nordberg]*

**JOHN A. NORDBERG**
**Senior United States District Court Judge**

**DATED:** April 18, 2013